**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MARC AARON MAINVILLE,**

      **Plaintiff,**

**v.**                                                                **Case No:   6:18-cv-482-Orl-41LRH**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

      **Defendant.**

___

**REPORT AND RECOMMENDATION**

Marc Aaron Mainville ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for adult child disability insurance benefits. Claimant raises three arguments challenging the Commissioner's final decision, and, based on those arguments, requests that the matter be reversed and remanded for further administrative proceedings. Doc. No. 15, at 23–25, 29–33, 36–38. The Commissioner asserts that the decision of the Administrative Law Judge ("the ALJ") is supported by substantial evidence and should be affirmed. *Id*. at 25–29, 34–36, 38–39. The undersigned **RESPECTFULLY RECOMMENDS** that the Court **AFFIRM** the final decision of the Commissioner.

**I.     DISABLED ADULT CHILD INSURANCE BENEFITS.**

The Social Security Act provides disability insurance benefits for a disabled adult child based on the earnings record of an insured person who is entitled to old-age or disability benefits or has died a fully or currently insured individual. 42 U.S.C. § 402(d); 20 C.F.R. § 404.350(a). In order to qualify for child insurance benefits as a disabled adult, several criteria must be met. 20 C.F.R. § 404.350(a)(1)–(5). As relevant here, if the claimant is over 18, the claimant must be

unmarried and "have a disability that began before [he] became 22 years old."  *Id.* § 404.350(a)(4), (5).[1]

The Social Security Act defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505.  To make a final determination as to whether an adult-child claimant is or is not disabled, the Commissioner employs the same five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520 that is applicable to adults:

> Specifically, the ALJ must determine whether the claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.   The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner to prove that other jobs exist in the national economy that the claimant can perform.

*Bowes v. Comm'r of Soc. Sec.*, No. 6:18-cv-349-Orl-37TBS, 2018 WL 7020191, at *1 (M.D. Fla. Dec. 27, 2018) (internal citations omitted), *report and recommendation adopted*, 2019 WL 175269 (M.D. Fla. Jan. 11, 2019).

## II.  PROCEDURAL HISTORY.

On April 28, 2015, Claimant filed an application for disabled adult child insurance benefits.  R. 236–42.[2]  He alleged that he became disabled on January 1, 1990.  R. 237.  His claim was

---

[1] Claimant is not married.  R. 725.  The relevant earnings record in this case is that of Claimant's father.  R. 237.

[2] On April 16, 2015, Claimant also filed an application for Supplemental Security Income Benefits ("SSI"), which was granted.  R. 131.  The issues before the Court do not include Claimant's SSI claim, which benefits relate only to his SSI application date and forward.  *See* 20 C.F.R. § 416.335 ("[T]he earliest month for which we can pay you benefits is the month following the month you filed the application.").

denied initially and on reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ").  R. 145, 152, 161.  A hearing was held before the ALJ on November 18, 2016, at which Claimant was represented by an attorney.  R. 43–100.  Claimant and his mother testified at the hearing, and a vocational expert ("VE") testified telephonically.  *Id.*

After the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled prior to attaining the age of 22.  R. 20–34.  Claimant sought review of the ALJ's decision by the Appeals Council.  R. 235.  On February 2, 2018, the Appeals Council found no reason to review the ALJ's decision.  R. 1–6.  Claimant now seeks review of the final decision of the Commissioner by this Court.  Doc. No. 1.

### III.    FACTUAL BACKGROUND.

####    A.    Hearing Before the ALJ.

At the November 18, 2016 hearing before the ALJ, Claimant testified that he was currently thirty-three years old and lived with his mother.  R. 47.  He received an associate's degree in 2006.  R. 48.  He graduated college Magnum Cum Laude.  R. 50.  During college, he was a member of the Phi Beta Kappa Honor Society.  R. 50.  However, in high school, he was in special education classes due to learning disabilities and his attention span.  R. 56.  When he was in high school, he was in the chess club.  R. 56.  He was also periodically on the honor roll.  *Id.*  Claimant's hobbies include reading the dictionary to increase his vocabulary, watching television, and following sports.  R. 51.  He has friends from high school, with whom he would play chess, watch movies, and go out to eat.  R. 52–53.

Claimant testified that he has learning disabilities that affect his attention span and ability to concentrate.  R. 56.  He stated that changes in his routine cause stress.  R. 57.  Claimant also testified that he has rippling muscle disease, a genetic disorder, as well as tinnitus.  R. 58, 63.

Claimant did not know whether the rippling muscle disorder affected his ability to work. R. 58. Claimant saw a psychiatrist, Dr. Lafrenier, between 2001 and 2005. R. 58–59. He also saw a psychologist, Dr. Dean Hokanson. R. 59. Claimant was also taking anti-depressants and sleeping aids during this period. R. 60. The ALJ asked why Claimant thought he could not work from 2001 to 2005. R. 55. Claimant responded that he did not know. *Id.* Claimant also testified that he did not look for a job during that time period. *Id.* Claimant has no relevant past work experience.

Claimant's mother also testified at the hearing. She testified that Claimant has trouble completing tasks, following directions, and paying attention. R. 74. She stated that he has depression, anxiety, and a "host of neurological problems." R. 74–75. She testified that he had trouble keeping up with his classes, he underachieved in all academic subjects, and that he was placed in special education classes in school. *Id.*

The VE testified telephonically. R. 81. The ALJ posed the following question to the VE regarding a hypothetical person:

> First of all, they had no exertional limitations. Okay? However, they did have some mental limitations in that they were limited to perform simple, routine and repetitive tasks. Their judgment was limited to making simple work-related decisions. They had no duties requiring contact with the public and they were limited to tolerating -- excuse me. They were limited -- let me back up. They were limited to no more than occasional changes in their work setting or work routine, which are based on work-related considerations. You know, which changes are based on work-related considerations.

R. 83–84. Based on these limitations, the VE testified that there were jobs existing in the national economy that such a hypothetical person could perform, such as hand packer (43,704 jobs available nationally); warehouse worker (21,127 jobs available nationally); and sorter (41,079 jobs available nationally). R. 84–86. The ALJ asked the VE whether the Dictionary of Occupational Titles ("DOT") specifically addressed limitations such as the person having no duties requiring contact

with the public and no more than occasional changes in the work setting or work routine. R. 85–86. The VE testified that although the DOT does not specifically address those limitations, the listed jobs would accommodate such limitations based on his experience in the field and observing those jobs performed. R. 86.

The ALJ then included within the hypothetical the limitation that the person could have no duties requiring teamwork with coworkers. R. 86. The VE testified with that limitation, the same jobs would exist in the national economy because those "are not teamwork jobs," and there would be no erosion in the number of jobs available based on this limitation. R. 87. The VE testified that this limitation was based on his work in the field, not the DOT. *Id.* The ALJ added the further limitation that the person be off task more than ten percent of the time during the workday. R. 88. With this limitation, the VE testified that the hypothetical person would be precluded from all work. *Id.* Again, the VE testified that his testimony was based on his work in the field, and not the DOT. *Id.* ("Generally an individual, they would access the restroom, go to get a drink of water, something like that, but for no more than five or six minutes during the hour. So that's where the 10 percent comes in. So anything over that would be extensive and a person would be unable to maintain work.").

The ALJ reverted back to the first hypothetical with the additional limitation that the person be limited to simple, routine, and repetitive tasks, but not at a production-rate pace, such as assembly line work. R. 93. The VE testified that the person would still be able to perform the jobs of warehouse worker and sorter, in addition to cleaner. R. 93–95. These limitations would not result in an erosion of the number of jobs available in the national economy for these positions. R. 94. The VE confirmed that his testimony was consistent with the DOT and his work in the field. R. 95. Counsel for Claimant confirmed with the VE that the DOT does not define "production-rate

pace." R. 97.

During the VE's testimony, counsel for Claimant asked whether the VE had any documents in front of him. R. 90. The VE stated that he had a "sample job list" on which he relied, which he stated contained a list of jobs with DOT numbers, SVP levels, and job numbers. R. 90–91. Counsel requested that the document be made part of the record, and the ALJ obliged that request. *Id.*; *see* R. 429. Before the hearing, counsel had submitted a letter to the ALJ requesting that a subpoena duces tecum be issued to the VE to ensure that the VE brings to the hearing any documents that the VE relied upon in determining the number of jobs for specific occupations in the national and regional economy. R. 177-78. Counsel further stated that without such documentation, she would be unable to adequately cross-examine the VE. *Id.* Counsel also objected to the VE's "expertise" to offer opinions "out of whole cloth" about the number of jobs that exist in the economy for occupations identified by the VE, and again requested that the VE be required to produce any source materials he used to come up with such job numbers. *Id.*[3]

B.   The ALJ's Decision.

After considering the hearing testimony and the evidence in the record, the ALJ conducted the five-step sequential evaluation of Claimant's case. First, the ALJ found that Claimant, who was born on February 18, 1983, had not attained age 22 as of January 1, 1990, the alleged disability onset date.[4] R. 23. The ALJ concluded that the first date of disability relevant to Claimant's claim was February 17, 2001, the date Claimant attained age 18. *Id.* The ALJ further concluded that Claimant had not engaged in substantial gainful activity since he turned 18 because other than a

---

[3] The letter is dated July 22, 2016. R. 177–78. During the hearing, counsel for Claimant likewise objected to the testimony of the VE "as set forth in [the] July 22 letter." R. 82. After the hearing, counsel submitted an additional memorandum to the ALJ arguing that the sample job list did not provide a sufficient foundation for the VE's testimony. R. 217–18.

[4] Claimant reached age 22 in 2005. R. 33.

brief period performing sheltered work in 2014 and 2015, Claimant had not worked. *Id.* [5]

Second, the ALJ found that Claimant had the following severe impairments prior to attaining age 22: attention deficit disorder; learning disability; and depression. *Id.* Third, the ALJ determined that these impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 24–27. The ALJ also concluded that Claimant's physical impairments were non-severe. R. 23.

Turning to the fourth step, whether Claimant can perform past relevant work, the ALJ found, based on a review of the entire record, that prior to age 22, that Claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> [H]e could perform simple, routine, and repetitive tasks, but not at a production rate pace. He could make simple work-related decisions. He could not perform duties requiring contact with the public. He was limited to tolerating no more than occasional changes in his work setting or work routine, which are based on work-related considerations.

R. 27. In making this assessment, the ALJ considered several categories of record evidence. The ALJ considered Claimant's testimony, and concluded that Claimant's reports concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the record. R. 28. The ALJ later stated that Claimant's testimony demonstrated that he functioned at a generally normal level despite his mental symptoms, although he tended not to be particularly social. R. 29. The ALJ found no evidence demonstrating a significant loss of functional ability. *Id.*

---

[5] It is clear that the ALJ considered the relevant evidence of alleged disability to be only that pertaining to Claimant between the ages of 18 and 22. *See, e.g.*, R. 21 ("[D]isability is irrelevant prior to the attainment of age 18. Thus, although the claimant alleges disability as of January 1, 1990, the first date for which disability is relevant to the determination is . . . the attainment of age 18.").

The ALJ also noted that there was no medical opinion evidence of record relating to the relevant period (which according to the ALJ was between age 18 and age 22) to support Claimant's allegation that he was disabled prior to age 22.  R. 28.[6]  The ALJ further noted that there was very little evidence of psychiatric treatment during the relevant period, other than Claimant's own testimony that he continued to see Dr. Lafrenier and Dr. Hokanson.  R. 29.  The ALJ considered other opinion evidence of record as well, including a 2015 opinion from the Bureau of Rehabilitation Services, which the ALJ assigned little weight because it occurred after the relevant disability period and was inconsistent with Claimant's high function.  R. 30–31.  The ALJ also considered a VA opinion, which it assigned little weight for the same reasons.  R. 31.  The fact that Claimant had executed a durable power of attorney to his mother in 2003 was also assigned little weight because the record did not provide a reason for the action and it did not inherently suggest mental incompetence.  *Id.*

In addition to this medical and opinion evidence, and even though the ALJ clearly held that the only relevant period was between the ages of 18 and 22, the ALJ also considered record evidence that existed prior to the date that Claimant attained age 18.  Such evidence included:

- Intellectual testing and a cognitive assessment from 1997 (R. 612–14, 633);
- Claimant's placement in special education in high school, demonstrating that academic performance was adequate with the accommodations given (R. 308);
- Evidence of Claimant's academic performance (R. 431, 616);
- SAT scores (R. 285);

---

[6] The ALJ considered the opinions of C. Lee Blair, M.D., Claimant's psychiatrist, but gave Dr. Blair's opinions little weight because Dr. Blair did not start treating Claimant until more than 3 years after he turned 22.  R. 28.  In addition, the state agency consultants had determined that there was insufficient evidence to evaluate Claimant's function prior to age 22.  *Id.*

- 8 -

- Emergency room records demonstrating that after Claimant was placed in regular classes, he had problems with focus, dry mouth, palpitations, visual hallucinations, and delusions and his reports about seeing Dr. Hokanson (R. 492, 494);

- A letter from Dr. Hokanson from December 2000, and letters from Claimant's mother to Dr. Hokanson (R. 448, 592, 1069); and

- Treatment visits with other providers, who the ALJ found did not to indicate significant mental deficits, including with hygiene, grooming, dress, cooperativeness, behavior, communications, memory, attention, or concentration (R. 640, 918).

R. 29–30.

The ALJ also considered the testimony of Claimant's mother, which he assigned limited weight. R. 31. The ALJ concluded that the mother was not a neutral source because she had a personal and financial interest in Claimant being awarded benefits, and her testimony was not entirely consistent with the record. *Id.* The ALJ also considered an undated statement from Claimant's aunt, which was assigned limited weight because she did not state the basis of her knowledge for Claimant's functioning or the amount of contact she had with Claimant during the relevant period, and her statement was not supported by the record. *Id.* The ALJ further discussed statements from Claimant's brother, which the ALJ accorded some weight because of his personal interest in seeing Claimant awarded benefits and because his relevant statement was not entirely consistent with the record evidence of Claimant's high academic achievement in college and largely normal daily functioning at the time. *Id.*

Claimant's mother had also completed an Activities of Daily Living form, which the ALJ afforded little weight. *Id.* The form was completed in May 2015, there was no indication it was intended to relate to the relevant period of disability, and its contents were not fully supported by the record. R. 31–32. A statement from Beverly Mainville was also given little weight because Ms. Mainville stated that she met Claimant in 2007. R. 32. Finally, the ALJ afforded some weight to the Global Assessment of Functionality ("GAF") scores of record. *Id.*

After considering all of the above-listed record evidence and a determination of Claimant's RFC, the ALJ found that Claimant had no past relevant work. *Id.* The ALJ then turned to the fifth and final step in his analysis, and based on the testimony of the VE, the ALJ concluded that prior to Claimant attaining age 22, there were jobs that existed in significant numbers in the national economy that Claimant could perform, including cleaner; warehouse worker; and sorter. R. 32–33. Accordingly, the ALJ concluded that Claimant was not disabled. R. 33–34.

## IV. STANDARD OF REVIEW.

Claimant having exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## V.     ANALYSIS.

Claimant raises three assignments of error: (1) the ALJ applied the incorrect standard set forth in 42 U.S.C. § 402(d) in finding that the relevant period of disability was only from ages 18 to 22; (2) the ALJ applied the incorrect standard set forth in § 402(d) by failing to consider opinion evidence from various sources that related to Claimant prior to attaining the age of 18; and (3) the ALJ erred at step five of the sequential evaluation process because the VE relied on a "mysterious list" in testifying about the jobs available in the national economy.   Doc. No. 15.   The undersigned will address each of these contentions in turn; however, the first two issues are interrelated and will be addressed together.

### A.     Application of 42 U.S.C. § 402(d).

42 U.S.C. § 402(d)(1)(B) provides, in relevant part, that an adult child claimant is entitled to benefits if "at the time such application [for child's insurance benefits] was filed [the adult child] was unmarried and . . . is under a disability (as defined in section 423(d) of this title) which began before he attained the age of 22."   Claimant attained age 22 in February 2005.   R. 33, 101.   In the decision and at the hearing, the ALJ stated that the only relevant period of disability in this case was from the date Claimant attained age 18 (February 2001) until the date he turned 22 (February 2005). *See* R. 21, 29.

Claimant's first two assignments of error can be combined as follows:   (1) Claimant argues that the ALJ erred in limiting the relevant period of disability to between ages 18 and 22; (2) evidence of disability at any time before age 22 is relevant to his claim; and (3) therefore the ALJ failed to apply the correct legal standard.   Doc. No. 15, at 24.   Although Claimant acknowledges that the ALJ cited to some of the evidence prior to Claimant attaining age 18, he argues that the ALJ

- 11 -

overlooked other important evidence from that period supporting Claimant's disability claim. *Id.* at 25.

Based on a plain language reading of 42 U.S.C. § 402(d), it does not appear than an ALJ is limited to considering evidence of disability only between the ages of 18 and 22 on a claim for a disabled adult child's disability benefits. The statute only requires the claimant to demonstrate that his disability "began before he attained the age of 22." 42 U.S.C. § 402(d)(1)(B). However, there does not appear to be any binding legal precedent interpreting this statute, and the undersigned is aware that courts have reached different conclusions. *Compare, e.g.*, *Hamiter v. Colvin*, No. 2:14-CV-03464-RBH-MGB, 2016 WL 536626, at *3 (D.S.C. Jan. 20, 2016), *report and recommendation adopted*, 2016 WL 524255 (D.S.C. Feb. 10, 2016) (finding relevant period to be only ages 18 to 22), *with Schold v. Astrue*, No. 3:12-CV-05429-RJB, 2013 WL 1090793, at *4 (W.D. Wash. Feb. 11, 2013), *report and recommendation adopted sub nom. Schold v. Colvin*, 2013 WL 1090043 (W.D. Wash. Mar. 15, 2013) (finding no requirement that the period under consideration by the ALJ is limited solely to that between ages 18 and 22). The Court need not resolve that legal issue here, however, because even assuming it is error for an ALJ to limit the relevant time period to between ages 18 and 22 and to focus solely on record evidence related to that period, the ALJ's decision in this case demonstrates that the ALJ in fact considered the record as a whole.

Claimant appears to be arguing that the evidence of his impairment prior to age 22 was relevant to the ALJ's RFC assessment. Doc. No. 15, at 29–34. "[T]he regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments," which includes consideration of "all the relevant medical and other evidence in the case." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004) (citations and quotations omitted).

Claimant acknowledges that the ALJ stated in the decision that he found that "evidence from

prior to age 18 supports [the ALJ's] conclusion about [Claimant's] function." *See* R. 29. As discussed above, the ALJ outlined several records from the time before Claimant reached age 18 in the decision when addressing Claimant's RFC. R. 29–30. The ALJ also referred to several records pertaining to Claimant prior to the age of 18 throughout other portions of the decision:

- Discussion of treatment records from prior to age 18 in determining the severity of Claimant's impairments. *See* R. 23–24 (citing Exhibit Exhibits 3F; 6F; 16F).

- Citation to a 1997 psychological evaluation in finding that Claimant had "marked limitations" in understanding, remembering, or applying information; he had documented decrease in visual processing speed and a learning disability, but exceled in college as stated in a letter from 2004. *See* R. 25 (citing Exhibit 6F, at 5, 23);

- Finding moderate limitations in interacting with others; although there were isolated incidents of conflict with other students (as documented in a letter from 1999) and he presented as socially awkward (as documented in a psychological evaluation from 1997), he participated in group projects, was cooperative, respectful, and appropriate to examiners. *See* R. 25 (citing Exhibits 7E, at 9; 27E; and 6F, at 25);

- Finding that based on 1998 report that Claimant had moderate limitations in concentration, persistence, and pace, noting that Claimant had problems with attention and distractibility, although he did well at times in high school. *See* R. 25 (citing Exhibit 27E, at 3);

- Noting intellectual testing and IQ scores from 1997. *See* R. 26–27 (Exhibit 6F, at 22, 23).

Thus, although the ALJ's decision reflects a heavier reliance on evidence regarding Claimant from ages 18 to 22, the decision also refers to portions of the record dating prior to Claimant turning 18 and reflects consideration of this evidence. Moreover, the ALJ's decision also repeatedly states the ALJ considered "all the evidence" and "the entire record." *E.g.*, R. 21, 23, 27.

Claimant contends, however, that there is significant other evidence of record that the ALJ failed to cite which documents the need for "accommodations and interventions" that would impact Claimant's ability to work. Doc. No. 15, at 33. Specifically, Claimant relies on:

- A 1990 education evaluation in which Claimant was noted as "very distractible." The examiner recommended "a very structured program," clear directions and instructions, encouragement to make eye contact, encouragement to ask questions, to obtain feedback to see if he understands directions, emphasis on an expressive language program, teaching strategies to improve memory skills, and behavior modification to increase sustained attention. *See* R. 664–69 (Exhibit 6F, at 75–80).

- A September 9, 1997 letter to Claimant's mother summarizing the Program for Evaluation of Development and Learning ("PEDAL") team's evaluation and opinions that Claimant had pressing issues related to his social and emotional functioning; diagnosing ADHD, learning disabilities, and dysthymia; and recommending "intensive special education intervention"; individualized teaching; "a therapeutic program to address emotional, behavioral, and educational concerns"; six different educational recommendations; and long-term psychotherapy. *See* R. 472–73 (Exhibit 2F, at 4–5).

- An October 24, 1995 psychological evaluation concluding: "The primary finding or diagnosis is one of combination learning limitation and emotional interference with concentration and performance in school." The evaluator recommended a list of accommodations including using examples, allowing more or less time, and encouraging "active involvement to counter preoccupation." *See* R. 674–75 (Exhibit 6F, at 85–86).

- October and November 1995 testing that was administered in a quiet room because Claimant was frustrated and had difficulty focusing. The examiner recommended modifications including sample problems, examples, verbal reminders, visual reminders, rephrasing, using notes, and extra time. *See* R. 646–47 (Exhibit 6F, at 57–58).

- An April 29, 1997 psychiatric evaluation diagnosing ADHD inattentive type and episodic periods of depression. The report notes that Claimant was accused of touching a teacher inappropriately. *See* R. 606–09 (Exhibit 6F, at 17–20).

- A June 8, 1998 recommendation regarding transitioning Claimant from middle school to high school that lists special accommodations including extra time, positive reinforcement, one-on-one reminders, visual reinforcement, concrete examples, extra practice, and extra time for oral responses. *See* R. 672–73 (Exhibit 6F, at 83–84).

- A June 11, 1997 PEDAL program evaluation summary, which noted that examiners observed Claimant was grim, lacked animation, did not make frequent eye contact, demonstrated performance anxiety and self-consciousness, frequently needed questions repeated, and displayed a very labored processing style. Claimant had weaknesses in attention, concentration, and processing speed. He had a depressive worldview, low trust, a self-protective stance, lack

> of maturity, neediness, and vulnerability. The evaluation recommended a mentor, therapeutic placement in special education, social skills training, and "accommodations and modifications to address learning and attentional issues." *See* R. 617–19 (Exhibit 6F, at 28–30).
>
> - A March 1998 opinion from a special education teacher who opined that Claimant worked well with teachers on a one-to-one basis and became confused and distracted when left to work independently. The teacher recommended continued direct assistance, continued special education with modifications and accommodations, and a vocational education course. *See* R. 431–32 (Exhibit 27E, at 1–2).
>
> - A June 16, 1998 teacher report that Claimant had difficulty with learning, noting that he worked well in the one-on-one setting, required directions to be repeated "very often," and performed better in a "calm environment." He had a "very inconsistent" work habit. *See* R. 433–35 (Exhibit 27E, at 3–5).

Doc. No. 15, at 31–32.

Claimant's reliance on this additional record evidence is unpersuasive. A review of the decision reveals that the ALJ cited to and discussed some of these records in his analysis. *See* R. 25, 29–30 (discussing pertinent portions of Exhibit 27E in finding that Claimant had moderate limitations in concentration, persistence, or pace, although at times he did well in high school, and that the most prominent complaint was Claimant's distractibility at times). In addition, as argued by the Commissioner, some of this evidence is duplicative of information already cited to and considered by the ALJ. For example, the records on which Claimant relies clearly state that Claimant required accommodations in school. The ALJ explicitly acknowledged that there was evidence demonstrating "a need for academic accommodation in high school." R. 32. Claimant also cites evidence that he was diagnosed with ADHD, learning disabilities, and dysthymia. The ALJ found all of these conditions to be severe impairments suffered by Claimant in this case. *See* R. 23. In addition, the ALJ's RFC determination included limitations that Claimant could perform only simple, routine, and repetitive tasks that could not be performed at a production rate pace; that he could only make simple work-related decisions; that he could have no duties requiring contact

with the public; and that he could tolerate no more than occasional changes in his work setting or work routine. R. 27. The ALJ explicitly acknowledged evidence related to Claimant's difficulty tolerating stress, difficulty taking tests, and perfectionist tendencies. R. 32. The ALJ also noted Claimant's anti-social tendencies, his socially awkward manner, and his history of altercations in high school. *Id.* Thus, although the ALJ did not explicitly cite to and discuss all of the above-referenced evidence in the decision, Claimant has not demonstrated how these records support greater restrictions than the ALJ found.

Notably, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, as was *not* the case here, is not a broad rejection which is 'not enough to enable [the Court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting *Foote*, 67 F.3d at 1561); *see also Davis v. Berryhill*, No. 8:18-CV-16-AAS, 2019 WL 519702, at *3 (M.D. Fla. Feb. 11, 2019) ("Provided her decision does not broadly reject a claim for Social Security benefits, the ALJ need not refer to every piece of evidence." (citing *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014))). Overall, in this case, the decision demonstrates that the ALJ considered the record as a whole. Therefore, I recommend that the Court reject Claimant's two first interrelated assignments of error.

      B.     <u>Error at Step Five of the Sequential Evaluation Process</u>.

At step five of the sequential evaluation process, substantial evidence must show that there are jobs that the claimant could perform that exist in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Commissioner bears the burden of demonstrating the existence of other jobs in the national economy that claimant can perform. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir.

1987)). The ALJ must make this finding "not by intuition but by substantial evidence." *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987). However, "[t]he Commissioner 'may rely solely on the VE's testimony' in making this decision." *Pena v. Comm'r of Soc. Security*, 489 F. App'x 401, 402 (11th Cir. 2012)[7] (quoting *Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999)). "If the SSA makes this showing, 'the burden shifts back to the claimant to prove she is unable to perform the jobs suggested by the [SSA].'" *Washington*, 906 F.3d at 1359 (alteration in original) (quoting *Hale*, 831 F.2d at 1011).

Claimant takes issue with the "mysterious list" that the VE stated that he had in front of him when he appeared at the hearing telephonically. Doc. No. 15, at 37. After the hearing, the document became part of the record. R. 429. Claimant argues that the document listed the same number of jobs cited by the VE at the hearing and relied on by the ALJ in the decision when finding Claimant not disabled, and these numbers were not adjusted according to expertise, current data, or the limitations in the ALJ's questions to the VE. Doc. No. 15, at 37. Thus, according to Claimant, "[t]hese numbers could have been conjured out of whole cloth," impacting meaningful cross examination, methodology, and due process. *Id.* at 38. Claimant contends that the ALJ erred in relying on the VE's testimony that relied on this "mysterious list" that was not available at the time of the hearing, and therefore the ALJ's findings are not based on substantial evidence. *Id.*

As the Commissioner points out, the relevant inquiry is whether the VE's testimony itself constitutes substantial evidence supporting the ALJ's step-five finding. Doc. No. 15, at 38. "The Social Security regulations provide that an ALJ may rely on a VE's knowledge and expertise, and they do not require a VE [to] produce detailed reports or statistics in support of her testimony."

---

[7] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36-2.

*Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012). Here, Claimant cites no authority supporting his position that the VE's reliance on this "mysterious list" constitutes reversible error. He also has not provided any data to suggest that the VE's numbers were inaccurate. Moreover, at the hearing before the ALJ, although Claimant objected to the VE testifying in reliance on a document that had not yet been produced, counsel for Claimant asked the VE no questions about how he decided to calculate the job numbers, the foundation for his testimony, or his methodology. The VE testified as to specific jobs, noted the number of jobs available for each of the positions—warehouse worker (21,127 jobs available nationally); sorter (41,079 jobs available nationally); and cleaner (140,060 jobs available nationally)—stated that his testimony was based on his experience and work in the field, and that it was consistent with and based on information found in the DOT. R. 85–86, 94, 95–96. The VE further testified that the occupational base would not be eroded by the limitations included in the ALJ's RFC determination. R. 87, 94.

"[T]he Social Security regulations clearly provide that a VE's knowledge and expertise may supply a reasoned basis for his conclusions." *Pena*, 489 F. App'x at 402.[8] Claimant "does not offer evidence to contradict the substance of the testimony of the VE, and a reasonable person would find this evidence sufficient to support the ALJ's conclusion that the specific jobs exist in substantial numbers." *Owens v. Comm'r of Soc. Sec.*, No. 6:12-cv-1686-Orl-DAB, 2014 WL 103445, at *7

---

[8] The United States Supreme Court has recently reiterated that the Federal Rules of Evidence do not apply in Social Security proceedings. *Biestek v. Berryhill*, 139 S. Ct. 1148, 115–56 (2019). The majority of the Court also held that there is no categorical rule requiring a VE to produce supporting data to corroborate his or her testimony. *See id.* at 1156–57 (citation omitted) ("Biestek goes too far in suggesting that the refusal to provide supporting data always interferes with effective cross-examination, or that the absence of such testing always requires treating an opinion as unreliable. Even without specific data, an applicant may probe the strength of testimony by asking an expert about (for example) her sources and methods—where she got the information at issue and how she analyzed it and derived her conclusions."). The inquiry is to be made on a case-by-case basis. *Id.* at 115.

(M.D. Fla. Jan. 10, 2014) (footnote omitted) (citing *Curcio*, 386 F. App'x at 926); *see also Leonard v. Comm'r of Soc. Sec.*, 409 F. App'x 298, 301 (11th Cir. 2011) ("A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005))). Accordingly, I recommend the Court find that the ALJ properly relied on the VE's testimony to determine the number of jobs available that Claimant could perform in the national economy.

## VI. RECOMMENDATION.

Upon consideration of the foregoing, it is **RESPECTFULLY RECOMMENDED** that the final decision of the Commissioner be **AFFIRMED**. It is further **RECOMMENDED** that the Court direct the Clerk of Court to issue a judgment consistent with its Order on the Report and Recommendation and, thereafter, to close the file.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on July 2, 2019.

_____
LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record

Unrepresented Party
Courtroom Deputy

- 20 -